# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS.

STATE MUTUAL FIRE INSURANCE ASSOCIATION *v.* BRINKLEY STAVE & HEADING COMPANY.

Opinion delivered May 18, 1895.

CONTRACT OF INSURANCE—WHEN COMPLETE.—When an application for insurance, made to the local agent of a foreign mutual fire insurance company, is by him forwarded to the company at its domicil, at which place the application is accepted, and the policy of insurance signed and mailed to the applicant, the contract is then and there complete, and is governed by the laws of such domicil, and not by the laws of this state.

FOREIGN INSURANCE COMPANY—DOING BUSINESS ILLEGALLY—PENALTY.—Under Sandels & Hill's Digest, sec. 4138, providing that any person or corporation receiving premiums or forwarding applications, or in any other manner transacting business for any insurance company not of this state, without having complied with certain statutory prerequisites, shall forfeit and pay to the school fund a sum mentioned, *held* that a contract made with a foreign insurance company through its local agent, before it has complied with the statute, is not, on that account, void, as the penalty imposed by the statute is exclusive of any other forfeiture.

INSURANCE—RECOVERY OF UNEARNED PREMIUM.—Where the charter of a mutual insurance company provides that "any member of this company may withdraw therefrom by notice in writing to the secretary and paying all dues and liabilities," a member thereof, on withdrawing, is entitled to recover the unearned premium paid by him, after deducting the amount of his dues and liabilities as a member as soon as the amount of such dues and liabilities can be ascertained.

Appeal from Monroe Circuit Court.

JAMES S. THOMAS, Judge.

*H. A. & J. R. Parker*, for appellant.

1.   The Foreign Corporation Act (Sandels & Hill's Digest, secs. 1322 to 1325), has no application to foreign insurance companies.   139 U. S. 223; 41 Fed. 643; 55 Ark. 163.

2.   The contract was made in Illinois, and is governed by the laws of that State.   2 Kent's Com. (12th ed.), *p. 477 and note; 3 Minor, Inst. 127; 2 Pars. Cont. (7th Ed.) 712 ; 1 *id*. 515, 516, 562; 3 Metc. 207.

3.   The statute imposes a penalty merely for violating the law, but does not avoid the contract.   Sandels & Hill's Digest, sec. 4138; 1 Fed. 471; 2 Morawetz, Corp., sec. 665; 11 S. E. 37; 18 Mo. 229; 24 Oh. St. 67; 31 Mich. 346 ; 102 Mass. 221; 2 Beach, Priv. Corp., sec. 415.

4.   Appellee not entitled to recover on his counterclaim.   He has not complied with section 9 of the charter.   It is bound by the contract, and must pay the dues and liabilities incurred, and yet unadjusted.   59 N. W. 250; *Ib*. 661 ; 56 *id*. 88, 755 ; 31 Pac. 327 ; 54 N. W. 544.

*C. F. Greenlee* for appellee.

1.   The contract was void for non-compliance with our laws by the company.   Art. 12, sec. 11 Const.; Sandels & Hill's Digest, secs. 4130 to 4136, etc.

2.   Where an act is prohibited by statute, or where the statute pronounces a penalty for an act, a contract to do the act or founded on such act is void.   5 Lawson, Rights & Rem., etc., sec. 2393 ; 25 Ark. 306; 47 Ark. 378, 383.

3.   A strict compliance with our statutory provisions is the only condition upon which foreign asso-

ciations are allowed to transact business in *this* State. 37 N. E. 834; 36 *id.* 59.

4. The contract was an Arkansas contract. There was no contract until the policies were accepted, and it is not denied that they were accepted in Brinkley, Arkansas. 60 Fed. 690, and cases cited.

HUGHES, J. The plaintiff (appellant), a mutual fire insurance company incorporated under the laws of the state of Illinois, sued the defendant (appellee) for an assessment of $225 for dues, losses and liabilities incurred as a member of plaintiff company on two policies. The defendant denied the liability; set up that the policies were canceled, that plaintiff owed it $125 for unearned premiums, and that plaintiff's contract on policies was void for non-compliance with the foreign corporation law; and prayed judgment for $125 on counterclaim.

The court found the facts to be: (1) That the insurance for which the policy was issued was solicited in the state by an agent of the plaintiff during the course of regular business herein, and that the application was made and the policy was accepted in this state. (2) That plaintiff is a foreign corporation, and has wholly failed to comply with any of the laws of this state regulating insurance, and was not entitled to transact insurance business in this state. (3) That the insurance was on the 26th of May, 1891, terminated, and defendant, on its cross-complaint, is entitled to recover from plaintiff $125, unearned premiums.

The court declared the law to be: (1) No foreign corporation shall do any business in this state, except while it maintains therein one or more known places of business, and an authorized agent in the same upon whom process may be served, and they shall exercise no greater powers, nor have any greater privileges, than

are exercised or had by like corporations of this state. (2) Before mutual fire insurance companies are permitted to do business in this state, it is required that they shall give bond to the state of Arkansas for the use of the beneficiaries of the policy holders of such companies, with security to be approved by the secretary of state, in the sum of $20,000, conditioned for the prompt payment of all assessments to the parties or beneficiaries entitled thereto, which bond shall be filed in the office of the secretary of state, and the law requires insurance corporations doing business on the assessment plan to make return to the auditor of state annually, on or before the 1st of March, a statement of the affairs of the corporation for the year ending on the 31st of December next preceding. (3) Plaintiff was not entitled to do insurance business in this state until it had complied with act 84 of the Acts of Arkansas for 1887, and received from the auditor of state a certificate to that effect ; and if any person transacted any insurance business for plaintiff, until it had complied with the requirements of said act, he was guilty of a misdemeanor, and subject to a fine in the sum of $500. (4) Plaintiff cannot recover in this action unless it has complied with sec. 3832 of Mansfield's Digest, and paid the taxes therein prescribed. (5) If plaintiff has wholly failed to comply with its duties, as prescribed in secs. 3833, 3834, Mansfield's Digest, and the act of Arkansas above mentioned, and the insurance was obtained from defendant company, and the same was solicited by an agent of plaintiff while in the course of regular business in this state, then plaintiff cannot recover in this action. (6) If defendant company or its agents requested the termination of the insurance, it is entitled to recover from the plaintiff the amount of unearned premium proved by the evidence: (7) Where an act is prohibited by

statute, a contract to do the act is illegal and unenforceable ; and where a statute pronounces a penalty for an act, a contract founded on such act is void.

The appellee made application to the agent of the appellant at Brinkley, Arkansas, for two policies of insurance in the appellant company. The applications were forwarded to the company at Chicago, Ill., and there passed upon, accepted, dated and signed by the proper officers of said company, which was a mutual fire insurance company, chartered under the laws of Illinois, with its domicil at the city of Chicago in said state. The policies were then sent by the company directly to the appellee at Brinkley, Ark., and the premiums were thereupon forwarded to the appellant company at Chicago.

It appears that the agent to solicit insurance for the appellant had no authority to pass upon applications to bind his company or to issue policies ; nor were the policies, when issued, sent to him for delivery, or the premiums paid to him to be forwarded to his company. These contracts, for the reasons stated, were not Arkansas contracts, but Illinois contracts.

When the applications of the appellee had been received, passed upon, and accepted, and the policies of insurance had been dated and signed at Chicago, and then mailed to the appellee, the contracts were then and there complete, and were Illinois contracts, and governed by the laws of that State. 2 Parsons on Contracts, 712; 2 Kent,Com. (12th Ed.) page 477, and note ; *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How. (U. S,) 390 ; *McIntyre* v. *Parks*, 3 Met. 207.

*When contract of insurance complete.*

Though the appellant company failed to comply with the statute in not doing those things required of foreign corporations before doing business in this state,

the contracts in this case were not void on that account, as they are Illinois contracts.

<span style="float:left">Liability of foreign insurance company doing business illegally.</span> It is also contended that these policies are void because the appellant company failed to comply with the statute in regard to "foreign insurance companies and agents therefor," found in Sandels & Hill's Digest, from section 4137 to section 4139 inclusive ; and particularly because section 4138 says that "any person or persons, or corporation, receiving premiums or forwarding applications, or in any other way transacting business for any insurance company or corporation not of this state, without having received authority agreeably to the provisions of this act, shall forfeit and pay to the school fund of the state the sum of five hundred dollars for each month or fraction thereof during which such illegal business was transacted ; and any company not of this state, doing business without authority, shall forfeit a like sum for every month or fraction thereof, and be prohibited from doing business in this state, until such fines are fully paid ; and every such person, or persons, or corporation, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not less than five hundred dollars."

It will be observed that, though penalties are imposed in this act upon the persons or corporations doing the things therein prohibited without first complying with its requirements, it does not make void the contracts made by the insurance companies without such compliance, either as the corporations named therein, or the policy holders in such companies.

In *Toledo Tie & Lumber Company* v. *Thomas*, 11 S. E. 37, it is stated—correctly, as we think—by the supreme court of appeals of West Virginia that "a contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do

business in another state will not on that account be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others." (See cases cited in that opinion).

The insurance contracts in this case were not void on account of the failure of the insurance company to comply with the statutory prerequisites to the right of a foreign insurance company to do business in this state. The penalty imposed by the statute was exclusive of any other forfeiture.[1]   *Washburn Mill Co.* v. *Bartlett*, 54 N. W. 544; 2 Morawetz, Corp. sec. 665.

There was a provision in these policies of insurance (sec. 8) that "this insurance may be terminated at any time at the request of the assured, in which cases the association shall retain only the customary short rates for the time the policy has been in force."

The defendant contends that, before the expiration of the first year for which it had paid premiums, to-wit, in May, 1891, and before the commencement of this suit, it requested the cancellation of its policies of insurance, and the return of the unearned premiums, amounting to $125, which amount the defendant claimed was due it, and for which it demanded judgment. It contended that its request for cancellation terminated its liability for any assessment thereafter made, and left the company indebted to it for unearned premiums, and says the company refused to cancel the policies or pay the unearned premiums till the maturity or anniversary of the policies. There was proof tending to support this contention.

*Recovery of unearned premiums.*

The company maintains that, before it could ascertain the amount due the appellee for unearned premiums,

---

[1]Cf. *Railway Company* v. *Fire Association*, 60 Ark. 325. (Rep.)

it would have had to await the expiration of the year, or the anniversary of the policy, that it might be able to determine for what proportion of the expenses and liabilities, in proportion to appellees' insurance, up to the date of the request for cancellation, the appellee would be liable, and it does not appear that there was any offer by appellee to meet these in any way; but it seems that the appellee claimed that it was entitled at once to the unearned premiums at the date of its request for cancellation of its policies, without provision for, or recognition of, any obligation to bear its legitimate proportion of the liabilities of the association of which the appellant was a full member, according to the charter of the said association.

The 9th section of the charter of the appellant company provides that "any member of this company may withdraw therefrom by notice in writing to the secretary and paying all dues and liabilities." If there were dues or liabilities which the appellee was liable to pay to the company, he was entitled to recover the unearned premiums, less the amount of his dues and liabilities to the association, but not until these could be ascertained, and the balance of the unearned premiums became due and payable according to the charter and by-laws of the association, to which the appellee subscribed when it became a member of the association.

It is apparent from what has been stated herein that the circuit court in its first finding of facts erred, and that in its third finding it stated only what was conceived to be the legal effect of the evidence, and not the evidence itself. The declarations of law made by the court are inapplicable to this case, and erroneous. The court, it seems, tried the case upon a wrong theory.

For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.