NEW YORK LIFE INSURANCE COMPANY *v.* CAMPBELL.

4-3882

Opinion delivered June 3, 1935.

*James B. McDonough,* for appellant.
*Miles, Armstrong & Young,* for appellees.

JOHNSON, C. J.   In 1928 appellant caused to be issued its policy of life insurance by the terms of which it insured the continued life of Bruce Campbell, and a corporation in which the insured was financially interested was designated therein as beneficiary.   On February 4, 1932, the original policy was reissued and Anna L. Campbell, wife of the insured, was named therein as beneficiary.   This policy expressly provided that "this policy takes effect as of the nineteenth day of November, 1928, which day is the anniversary of the policy."   On March 19, 1932, the policy lapsed for nonpayment of premium and on March 29, 1932, the insured made written application for reinstatement which was subsequently on March 30, 1932, duly granted and the policy reinstated.

The relevant provisions of the policy necessary to a decision of the contention urged on this appeal are as follows:

"Reinstatement.   This policy may be reinstated at any time within five years after default upon written application by the insured and presentation at the home

office of evidence of insurability acceptable to the company, and upon payment of overdue premiums, with six per cent. interest thereon from their due date.''

\* \* \*

''Incontestability. This policy shall be incontestable after two years from its date of issue, except for nonpayment of premiums, and except as to provisions and conditions relating to double indemnity.''

About September 10, 1933, the insured suffered a stroke of paralysis and advised appellant thereof, and this suit was instituted in equity by appellant against the insured and the designated beneficiary on March 27, 1934, seeking the cancellation of the policy, because, as it is alleged, its reinstatement was superinduced by fraud practiced by the insured upon it. Appellees answered appellant's complaint by general denial, and affirmatively pleaded the issuance of the policy in 1928, and the two years incontestable clause therein contained as a complete defense to the alleged cause of action.

The testimony adduced upon trial was to the effect that the insured stated in his application for reinstatement of his policy of insurance that his health and physical condition were in the same state they were when the original policy was issued in 1928, and that within two years last past he had had no illness, disease or injury, nor had he been treated by or consulted a physician. Dr. Gregg testified that he treated the insured from October 2, 1931, until February 1, 1932, for dizziness or vertigo, and that the insured's kidneys showed some albumen and a toxic condition. That witness pronounced insured's ailments as ''chronic nephritis.''

Other testimony was heard by the chancellor, but it is not deemed relevant to the decisive issue on appeal, and we therefore omit a synopsis thereof. The chancellor dismissed appellant's complaint for want of equity, and this appeal follows:

The decisive and controlling question presented by this appeal is, do the misrepresentations made by the insured, and upon which the insurer relied in reference to his health in his application for the reinstatement of his policy render such reinstatement void?

The answer to this question is dependent upon a construction of the contract of insurance in reference to reinstatements of lapsed policies. This contract, as appears from the provisions heretofore quoted, gives to the insured the right to be reinstated at any time within five years after default upon his written application—the presentation of evidence of insurability, and the payment of past-due premiums with interest. We have many times decided under contracts of insurance not materially different from the one here under consideration, that the right of reinstatement is not a gratuity on the part of the insurer, but is a contractual right and obligation, and that the insurer has no right or authority to enlarge the terms upon which reinstatement may be effected. *Equitable Life Ins. Co.* v. *King,* 178 Ark. 293, 10 S. W. (2d) 891; *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123, 235 S. W. 412; *Illinois Bankers' Life* v. *Hamilton,* 188 Ark. 887, 67 S. W. (2d) 741; *Security Life Ins. Co.* v. *Leeper,* 171 Ark. 77, 284 S. W. 12; and *Life & Casualty Co.* v. *McCray,* 187 Ark. 49, 58 S. W. (2d) 199.

In *Illinois Bankers' Life* v. *Hamilton, supra,* we stated the applicable rule as follows:

"It will be noted that the provision for reinstatement contained in the policy in the case at bar places no burden or restriction upon the right of reinstatement save the furnishing of satisfactory and acceptable evidence of insurability, and the payment of all past-due premiums with compound interest thereon at the rate of six per cent. per annum, the latter provision being ample consideration moving to the company. As is held in the Arkansas cases cited, the company had no right to enlarge the terms upon which reinstatement could be obtained. It had the right to defer its action on the application for reinstatement for a reasonable time in which it might investigate the insurability of the applicant, and there was no requirement in the original contract that the answers to the questions in the application for a reinstatement should be true and a condition precedent to the reinstatement of the policy, and to its validity when so reinstated. * * * In our cases cited, *supra,* the doctrine is laid down that, since the reinstate-

ment is not a gratuity, the insurer had no right to enlarge the terms upon which reinstatement could be obtained.''

It necessarily follows from what we have said, and the cases cited in support thereof that the reinstatement of the insured by appellant created no new contract between them, but simply revives and reinstates the original contract and all provisions thereof, and subsequently the rights and obligations of the respective parties thereto must be measured thereby.

Appellant next urges that the incontestable clause of the policy heretofore quoted gives to it two years from the date of reinstatement to contest the insured's right to reinstatement. This construction can be sustained only upon the theory that courts can or should make contracts for parties. We have uniformly held otherwise. See cases cited vol. 2, Crawford's Arkansas Digest, §§ 67, 68, 69 and 70 under title of Contracts. The incontestable clause here under consideration provides in no uncertain language that the policy shall be incontestable after two years from its date of issue except for nonpayment of premiums, etc. This can mean but one thing, when applied to the facts and circumstances of this case; namely, that this suit can not be maintained. The original contract does not give to the insurer the right to contest reinstatements effected through fraud subsequent to two years from the date of the issuance of the policy, and this suffices to answer all contentions advanced in this behalf. See *Life & Casualty Ins. Co.* v. *McCray, supra.*

The contention is urged that such construction of the contract of insurance permits the insured to effect reinstatement by fraud and deceit. Even so the insurer had a fair opportunity to make such investigation in reference to the truthfulness of the answers contained in the application for reinstatement prior to the reinstatement as it saw fit, and when it accepted the insured's statements in reference to his health and physical condition, and the policy was reinstated by the insurer, the door was forever closed to future investigation.

The contention is also made that *Pacific Mutual Life Ins. Co.* v. *Butler,* 190 Ark. ......., 78 S. W. (2d) 813, is au-

thority for the position that fraud which superinduced a reinstatement may be urged at any time to avoid it, and especially it may be invoked within the time provided within the incontestable clause of the contract. This is not the effect of the Butler case. If the policy there under consideration contained an incontestable clause, it is not disclosed by the opinion, and for this reason it is no authority in the instant case.

Many authorities are cited in briefs of counsel from other jurisdictions which support or tend to support the position of the respective parties, but, since our own decisions on the vital questions in the case are decisive of the contentions urged, we deem it unnecessary to discuss these cases.

No error appearing, the judgment is affirmed.