**Laura Elizabeth Kirkpatrick Webb BARFIELD, Appellant,**

v.

**Billy K. WILSON, Jerry W. Joyner and the Penn Mutual Life Insurance Company, Appellees.**

**Jerry W. JOYNER and the Penn Mutual Life Insurance Company, Cross-Claimants,**

v.

**Billy K. WILSON, Cross-Defendant.**

Supreme Court of Tennessee, at Jackson.

April 16, 1984.

J. Houston Gordon, Gordon, Forrester & Whitaker, Covington, for appellant.

Fred M. Ridolphi, Jr., Frederick Zimmermann, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, for Jerry W. Joyner and Penn Mutual.

Walker T. Tipton, Tipton, Tipton & Acree, Covington, for Billy K. Wilson.

## OPINION

COOPER, Justice.

Laura Elizabeth Barfield, brought this action against Penn Mutual Life Insurance Company, its general agent, Jerry W. Joyner, and its soliciting agent, Billy K. Wilson, to recover the proceeds of a term life insurance policy issued by Penn Mutual upon the life of Joe Brown Barfield. Mr. Barfield drowned in the flood waters of the Mississippi River on March 15, 1979.

The gravamen of the plaintiff's action was twofold. She insisted primarily that the policy of insurance, which had been permitted to lapse, had been reinstated and was in full force and effect at the time of the death of the insured. Alternatively, plaintiff charged that if the policy was found not to have been reinstated, the failure to reinstate was due to the negligence of the defendants, making them liable to the plaintiff in the amount of the policy. The defendants filed comprehensive answers, denying the material allegations in the complaint and pleading the statute of limitations to the negligence charge. Penn Mutual and its general agent filed a cross-claim against the soliciting agent seeking indemnity or contribution in the event they were required to pay the policy proceeds to appellant.

The chancellor found that the defendants were jointly and severally liable "under the contract of insurance and under negligence arising out of the Defendants' handling of the ... application for reinstatement" and entered judgment for the plaintiff for $100,000.00, plus interest. Judgment was

entered in favor of the soliciting agent, Billy K. Wilson, on the cross-complaint.

The Court of Appeals found, in essence, that (1) the contract of insurance had not been reinstated, and (2) that no recovery could be had under the theory of negligent delay in acting on the application for reinstatement as there was no evidence that plaintiff relied to her detriment on the defendants' prompt processing of her husband's reinstatement application. The Court of Appeals, accordingly, reversed the judgment of the trial court and dismissed the action. This appeal resulted.

The record shows that Penn Mutual issued a life insurance policy in the amount of $100,000 on the life of Joe Brown Barfield, effective May 1, 1977. His wife, the plaintiff Laura Elizabeth Barfield, was named sole beneficiary. The policy was a "term policy" expiring May 1, 1984, and provided in part, as follows:

Reinstatement—This policy may be reinstated within five years after lapse for nonpayment of premiums. Reinstatement is subject to receipt of evidence of insurability satisfactory to the Company and payment of (i) the premium currently due at the time of reinstatement plus (ii) the premium applicable to the grace period which followed the date of default in premium payment.

The policy premium due on May 1, 1978, was not paid and the policy by its terms lapsed on passage of the thirty-one day grace period. Joyner, Penn Mutual's general agent, notified the soliciting agent, Wilson, of the lapse, and instructed him to solicit a reinstatement of the policy.

In either June or July, 1978, Wilson discussed the lapsed policy and the possibility of reinstatement with the Barfields. The Barfields, who were engaged in several businesses and owned and operated a farm in Tipton County, told Wilson that they wanted to keep the policy but that there was some question about the availability of funds for payment of the premium. Wilson then agreed to make a loan to the Barfields for the payment of the premium, and advised them he would either pay the premium by his personal check or have the amount of the premium subtracted from his commission account with the Joyner Agency. The Barfields then executed the Application for Reinstatement of the policy of insurance.

Wilson turned the application over to the Joyner Agency for processing, telling the employee in charge of that phase of the business that the premium was to be paid by Wilson by personal check or it could be charged against Wilson's commission account. No objection was made by Joyner as to this method of payment of the requisite premium.[1] The agency did not submit the application to Penn Mutual, however, but instead placed it in the office "pigeonhole" assigned to Mr. Wilson. The reason given for this action was that the application for renewal had been made on the wrong form.

Wilson then obtained Mrs. Barfield's signature on a Penn Mutual form entitled "APPLICATION FOR REINSTATEMENT WITHIN NINETY DAYS FROM PREMIUM DATE." The application, which was executed on August 10, 1978, was completed more than ninety days after the premium date and was never forwarded to Penn Mutual. Instead, the agency furnished Wilson with a different application renewal form to have signed by the Barfields. The form, which was entitled "CERTIFICATE OF INSURABILITY," is used when an application for renewal is made more than ninety days from premium date. The form was executed by the Barfields on September 19, 1978, and was given to Mr. Wilson. In general, the form restated the information in the earlier applications, and included a statement that Mr. Barfield was in good health and reference to the fact that Mr. Barfield had had a physical examination on August 2, 1978, prior to going to camp with the National Guard, and had been found to

---

1. Both lower courts found, and we concur, that the premium loan by Wilson was receipt of premium payment under the policy conditions for reinstatement.

be in good health.[2] Thereafter, on more than one occasion, Wilson told Mrs. Barfield that "the policy was in the process of being reinstated" and that "it was in the works."

On March 15, 1979, Mr. Barfield was drowned in the flood waters of the Mississippi River. On March 26, 1979, Mr. Wilson found on his desk the "CERTIFICATE OF INSURABILITY" executed by the Barfields on September 19, 1978. Mr. Wilson immediately forwarded the application to the Joyner agency, along with his check for $250.00. Later that day, he contacted Mrs. Barfield and advised her of what he had done. Mrs. Barfield than repaid the $250.00 premium loan.

Under the terms of the policy of insurance, reinstatement of coverage is not optional with the company, but the insured is given the right to reinstate the policy at any time within five years of its lapse for non-payment of premium on (1) paying the premium due, and (2) giving satisfactory evidence of insurability to Penn Mutual. *See* 3A Appleman, Insurance Law and Practice § 1971 (1967), wherein it is pointed out that:

> It has been held in many of the more recent decisions that the insured has an absolute right to reinstatement upon complying with the policy terms and provisions, which right is considered to be a substantial property right.

For example, in *Burnham v. Bankers Life & Casualty Co.*, 24 Utah 2d 277, 470 P.2d 261, 264 (1970), the court held that a contract provision providing for reinstatement upon payment of the amount in default and production of satisfactory evidence of insurability gave the insured an absolute right to reinstatement. Similarly, in *New York Life Ins., Co. v. Campbell*, 191 Ark. 54, 83 S.W.2d 542, 544 (1935), the court construed a policy provision that was virtually identical to the one at issue here.

The court held that "the right of reinstatement is not a gratuity on the part of the insurer, but is a contractual right and obligation and ... the insurer has no right or authority to enlarge the terms upon which reinstatement may be effected." *Id.* Since evidence of insurability and payment of premiums were the conditions precedent to reinstatement, the company could defer action on the application for a reasonable time in which to investigate the applicant's insurability but could not enlarge the terms of reinstatement. *Id.* *See also Funk v. Franklin Life Insurance Company*, 392 F.2d 913 (7th Cir.1968).

Where the right of reinstatement is given an insured, subject to conditions as in the Penn Mutual policy, the insurer is bound to consider the application for reinstatement on its merits, and may not act arbitrarily, or capriciously, or in bad faith. *Ewoldt v. American National Ins. Co.*, 190 Neb. 290, 207 N.W.2d 521 (1973); *Sunset Life Ins. Co. of America v. Crosby*, 85 Idaho 407, 380 P.2d 9 (1963); *Illinois Bankers Life Association v. Palmer*, 176 Okl. 514, 56 P.2d 370 (1936). The insurer also has the duty to pass upon the application for reinstatement with reasonable promptness and diligence under the circumstances. *American Life Ins. Co. of Alabama v. Hutcheson* 109 F.2d 424 (6th Cir.) *cert. denied*, 310 U.S. 625, 60 S.Ct. 898, 84 L.Ed. 1397 (1940); *Rocky Mount Savings & Trust Co. v. Aetna Life Ins. Co.*, 199 N.C. 465, 154 S.E. 743, 745 (1930). *See also* 3A Appleman, Insurance Law and Practice § 1974 (1967); 45 C.J.S., *Insurance* § 637(5) (1946). Undue delay by an insurer, from whatever reason, in acting upon the application for reinstatement of a policy of insurance may amount to a waiver of the formal policy requirements for reinstatement and operate as an effective revival of the policy. *See generally* Annot., 105 A.L.R. 478, 486 (1936); 3A Appleman, Insurance Law and Practice § 1974 (1967).

**2.** Prior to the time of the issuance of the original policy of insurance in 1977, Mr. Barfield was examined by a physician selected by Penn Mutual, who reported Mr. Barfield to be in good health. The same physician examined Mr. Barfield on January 17, 1979, for purposes of the National Guard, and found that there had been no change in the condition of Mr. Barfield's health.

In this case, the premium for the Barfield policy reinstatement was paid by a policy loan from Mr. Wilson. As was pointed out by the Court of Appeals, "once the [premium] loan was made the money was in effect deposited with Wilson as agent of Penn Mutual, and his failure to send it to Penn Mutual was an act by him as the agent of Penn Mutual. Wilson was acting within the general scope of his authority, and he thus bound his principal. *Industrial Life and Health Insurance Co. v. Trinkle,* 185 Tenn. 434, 436, 206 S.W.2d 414, 415 (1947)." *See also* T.C.A. § 56–6–124, which expressly provides that:

> Every agent or limited insurance representative who solicits or negotiates an application for insurance of any kind, shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer be regarded as agent of the insurer and not the insured or his beneficiary.…

As to evidence of insurability, the Barfields filled out all forms asked for by the agents of Penn Mutual. No new medical examination was asked for or had, but notation was made in the appropriate space on the application for reinstatement showing that Mr. Barfield had had a physical examination some six weeks prior to executing the application form and was found to be in good health. It is true that Penn Mutual never had the opportunity to decide whether this information, along with the answers to questions on the application concerning Mr. Barfield's medical history, was sufficient evidence of insurability, but this was due to the act of Penn Mutual's agent in holding, or rather losing on his desk, the application for reinstatement. The Barfields can not be forced to bear the responsibility for the act of Penn Mutual's agent. They had every reason to believe that the application for reinstatement was in order and was being processed. In fact, Penn Mutual's agent told them it was. Further they knew that Joe Brown Barfield was in good health. After the application for reinstatement was filed, Mr. Barfield was examined by the same physician that examined him when the policy of insurance was issued and was found to be in good physical condition. Under these circumstances, we find that Penn Mutual waived the formal policy requirement of receipt of satisfactory evidence of insurability, and that the policy of insurance on the life of Joe Brown Barfield was reinstated and was in effect at the time of his death.

The judgment of the Court of Appeals is reversed. Judgment will be entered against Penn Mutual Life Insurance Company for the face amount of the policy, plus interest. The action against Penn Mutual's agents, Billy K. Wilson and Jerry W. Joyner, and the cross-action against Billy K. Wilson are dismissed. Costs will be paid by Penn Mutual Life Insurance Company.

FONES, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.